UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80412–CIV– MARRA/JOHNSON

FAITH E. GORDON and
STEVEN C. GORDON,

    Plaintiffs,
vs.

TARGET CORPORATION,

    Defendant.
_____/

## ORDER AND OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendant's Motion For Summary Judgment [DE 16]. The motion is fully briefed and ripe for review. The Court has carefully considered the motion, response, reply and all evidence submitted in support of and in opposition to the motion, as well as the entire Court file.

## Introduction

This case arises out of a slip and fall which occurred on August 23, 2006 at a Target store located in Palm Beach Gardens, Florida. Plaintiffs filed their complaint in the Circuit Court of Palm Beach County, Florida alleging negligence and loss of consortium. Defendant removed this action to federal court and moved for summary judgment. Faith Gordon's ("Gordon" or "Plaintiff") answers to interrogatories and deposition testimony present a theory that the floor itself created a slick condition which caused the fall. Target Corporation ("Target" or "Defendant") moves for entry of summary judgment in its favor arguing that there is no evidence of any transitory

or foreign substance on the aisle floor, or proof of any negligent maintenance, which would have caused or contributed to the Plaintiff's fall.

**Undisputed Facts**

Gordon was shopping at Target on August 23, 2006.  Gordon Depo. at 26.  DE 16-2.  When Plaintiff went to check out, the price of the storage boxes she wished to purchase did not come up on the register.  Gordon Depo. at 26-27.  As a result, Gordon went to check the price of the item on the shelf.   *Id*.  While on her way to do so, she slipped and fell in an aisle.  *Id*.  Gordon was transported by ambulance to the hospital.  Gordon Aff. ¶ 7.  Gordon suffered a concussion and broke her right elbow and three bones in her left foot.  Gordon Aff. ¶ 2.  Gordon was wearing two-inch Onyx wedge sandals at the time of her fall.  Gordon Depo. at 33-35.

Regarding what caused the fall, on July 30, 2007, Gordon made the following answer to interrogatory number 8, which asked her to describe in detail how the incident happened, including all actions taken by Plaintiff to prevent the accident:

> On the date of the accident I was trying to purchase storage boxes at Target.  The person at the register did not know what the price of the storage boxes was, so I was walking back to find out the price.  I was walking from a carpeted area to a hard surfaced area and with my first step on the hard surfaced area, my foot (shoe) slipped and I fell forward.  I landed on top of my right arm/elbow and my face and head slammed the hard surfaced floor.  There was nothing I could have done to prevent this from happening.

Interrogatory number 9 asked her to describe in detail each act or omission on the part of any party to the lawsuit that Plaintiff contends constituted negligence that was a contributing legal cause of the incident. Plaintiff responded:

> My attorney is still investigating what Target did wrong. I know when I first stepped on to the hard surfaced floor it was so slick that I had no traction so I fell and was badly injured. Target caused or allowed the carpet or floor to be dangerous.

In response to interrogatory number 13, which asked Plaintiff to describe with specificity every object or obstruction on which Plaintiff fell or tripped or struck following the alleged fall or trip, Plaintiff averred:

> I do not know what was on the floor; I do know it was slick and there was no traction with my first step on the hard surfaced floor.

DE 45.

Regarding the same issue, at her deposition taken October 12, 2007, Plaintiff stated as follows:

Q: Was there anything on the floor that caused you to fall?

A: I have no idea.

Q: Did you see a hangar, debris, paper, anything like that?

A: I don't remember.

Q: Did you see any water on the floor?

A: I don't remember.

Q: Did you see any liquid of any sort on the floor?

> A: I don't remember.
>
> Q: Do you know what caused you to fall?
>
> A: I have no idea.

Deposition of Faith Gordon, DE 16-2, at 32-33.

The final piece of evidence submitted on this issue is Faith Gordon's affidavit submitted in opposition to the motion for summary judgment. In her affidavit, signed December 5, 2007, Gordon avers:

> [O]n the date of the accident at the Target store, my first step from the carpet to the tile caused me to slip and fall. My first step from the carpet to the tile was with my left foot and when my left foot was planted on the tile I had no traction. The spot I hit was like ice. At the time I smelled something like a cleaning product. The cleaning product smelled like WD-40 or floor cleaner.[1] I fell so hard I broke my right elbow; three bones in my left foot; suffered a huge right black eye; suffered a concussion and neck injury; and I still suffer from to day, almost one and a half years later. I was walking through the store, not running, and I would never have suffered the injuries I suffered unless the floor was super slick, causing me to fall with great force.

Gordon Affidavit, DE 23-2, ¶ 2.

Once Plaintiff fell, several people arrived at the scene, including Target employees Stephanie Hardin and Paula Cavin, and emergency medical technician

---

[1] This is the first time Plaintiff mentions smelling a cleaning product. This assertion is contradicted by her answer to interrogatory number 13, wherein Plaintiff averred, "I do not know what was on the floor." It is also contradicted by her deposition testimony, wherein she stated that she "had no idea" what caused her to fall.

("EMT") Jose Santiago and paramedic Anthony Ferrer.  Each of these individuals examined the floor and the Plaintiff and observed nothing that could have contributed to Gordon's fall.  Target Protection Specialist Paula Cavin testified as follows:

> Q: When you heard her scream, how long did it take you to walk there?
>
> A: A few seconds.  I looked around the corner, I saw her laying there and I immediately went to that area, called the Code Green.
>
> Q: When you got to the scene, did you look and check the floor to see if there was any reason or any problem with the floor that would have caused Ms. Gordon to fall?
>
> A: Yes.
>
> Q: It is important for you to do that?
>
> A: Yes.
>
> Q: And why is that?
>
> A: Well, for one, it's one of my core roles to do.  There was - - when we call a Code Green, team leaders in the store, they all come to the scene, the exec comes to the area, they don't want anybody else tripping and falling.  I didn't want the guests walking by tripping and falling, slipping and falling.  I wanted to make sure the area was safe for the ambulance people, for our team members, for our guests.
>
> Q: When you checked the floor, did you get down and check it with your hand?
>
> A: Yes, I did.
>
> Q: Did you check it with your shoes to see if there was a slippery area?
>
> A: Yes.

> Q: Did you find anything slippery?
>
> A: No.
>
> Q: Did you find anything at all that was out of the ordinary or a hazard that might have caused Ms. Gordon to fall?
>
> A: No.

Deposition of Paula Cavin, DE 23-3, at 36, 42-43.  Executive Team Leader Stephanie Harden testified as follows:

> Q: Okay.  So you have the first step of preparing the report and gathering information from the scene?
>
> A: Yes.
>
> Q: Okay.  And when you went to the scene in this case, was the floor clean and dry?
>
> A: Yes.
>
> Q: Okay.  Did you find anything on the floor that would have caused Ms. Gordon to fall on August 23rd?
>
> A: No.
>
> Q: Did you check her clothes to see if her clothes had picked up any moisture?
>
> A: Yes.
>
> Q: And were they dry?
>
> A: They were dry.
>
> Q: Did you see any hangers or any kind of article that would be foreign to the floor that shouldn't be there that would have caused her to fall?
>
> A: No.

> Q: Did you get down and check the floor with your hand in the area of where her fall occurred?
>
> A: Yes.
>
> Q: And when you checked the floor with your hand, was the floor clear and dry?
>
> A: Yes.
>
> Q: Did it appear slippery to you in any fashion, the floor?
>
> A: No.
>
> Q: Had you been in that area within five or ten minutes of this accident happening?
>
> A: Yes.
>
> Q: And had you walked approximately the same area where Ms. Gordon had walked?
>
> A: Yes.
>
> Q: And did you have any trouble; was it slippery, was there anything unusual about the area when you traversed it about five minutes before Ms. Gordon's accident?
>
> A: No.

Deposition of Stephanie Hardin, DE 23-4 at 54-56.  Jose Santiago, EMT, testified that:

> Q: So if there were a hazard present when you arrived on the scene, is this where you would record it?
>
> A: If there is anything around the patient or anything around that could be dangerous or cause any type of problem or hazard, yes, we'll make sure we make note of it.
>
> Q: Is there any type of hazard noted her on your report?

> A:    From what I could see, no.
>
>       . . .
>
> Q:    And then there is category, "Field Impressions." And is that based – is that the input from your group, the Fire Rescue Paramedics?
>
> A:    This is our input as for the paramedics.
>
> Q:    And that's your impression as to what happened and what you found, is that right?
>
> A:    Right.
>
> Q:    And what is recorded there, please?
>
> A:    Under the field impression i[t] says, "stumbled and fall, bumping forehead, causing an abrasion to the right eye and pain to the left arm."

Deposition of Jose Santiago, DE 32-2 at 13, 17-18.  Anthony Ferrer, Palm Beach County Fire Rescue paramedic, also testified that he observed no hazards of any sort when he arrived at the scene where Gordon was.  Ferrer Deposition, DE 32-3 at 16-17.

**Standard of Review**

A court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(c), which states, in relevant part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).  The moving party bears the burden of meeting this exacting

standard.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  That is, "[t]he moving party bears 'the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' "  *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Celotex,* 477 U.S. at 323).  In assessing whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party.  *Batey v. Stone*, 24 F.3d 1330, 1333 (11th Cir.1994).

The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position.  A jury must be able reasonably to find for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-252 (1986); *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).  Moreover, the Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative value."  *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985).  "The failure of proof concerning an essential element of the non-moving

party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment." *Henderson v. Carnival Corp.*, 125 F. Supp. 2d 1375, 1376 (S.D. Fla. 2000).

**Discussion**[2]

To sustain a cause of action for negligence, the burden of proof is on the plaintiff to establish that: (1) the defendant owed a duty of reasonable care to maintain the premises in a reasonably safe condition; (2) the defendant breached that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injuries and resulting damages. Section 768.0710, Florida Statutes; *Lake Parker Mall, Inc. v. Carson*, 327 So.2d 121, 123 (Fla. Dist. Ct. App. 1976). To establish a breach, the plaintiff must show that the defendant failed to exercise reasonable care in the maintenance, inspection, repair, warning, or mode of operation of the business premises. *Id.*; *Spadafora v. Carlo,* 569 So.2d 1329, 1330 (Fla. Dist Ct. App. 1990). "Negligence [however] may not be inferred from the mere happening of an accident alone." *Belden v. Lynch,* 126 So.2d 578, 581 (Fla. Dist. Ct. App. 1961); *see also East Bay Raceway v. Parham*, 497 So.2d 719, 720 (Fla. Dist. Ct. App. 1986). The mere fact that one slips and falls on a floor does not constitute evidence of negligence, nor does the fact that a floor was slick make the owner liable. In *Bucholtz v. City of*

---

[2] As the Eleventh Circuit noted in *Davis v. National Med. Enter., Inc.*, 253 F.2d 1314, 1319 n.6, "[a]s a federal court sitting in diversity, we apply the substantive law of the forum state."

*Jacksonville*, 72 So.2d 52, 53 (Fla.1954), the Florida Supreme Court rejected the claim of a woman who slipped and fell on steps where it was alleged the treads of the steps were permitted to be "worn slick and smooth". The court noted that the owner of property which contains areas that become smooth are not obligated to "destroy the smoothness" of such areas. *Id*. The court further described the case as "a good illustration of the thought that every time someone is injured, someone else should pay for the injury." *Id. See also Williams v. Holland*, 205 So.2d 682, 683 (Fla. Dist. Ct. App. 1968). Where the facts of a case are undisputed and the evidence ultimately leads to but one conclusion, the question of negligence becomes one of law for the trial court. *Stirling v. Sapp*, 229 So.2d 850, 853 (Fla. 1969).

In the instant case, the undisputed facts are that Gordon fell and was injured in a Target store. Gordon has no idea what caused her to fall, except that the floor was "super slick." Beyond this fact there is no testimonial or direct evidence either as to the condition of the floor or the cause of the fall. Four people arrived at the scene shortly after the fall and no one saw anything that could account for the fall.

In order to arrive at a conclusion that Target was responsible in damages for the ultimate injury, the jury would have to infer in the first place that under all of the circumstances there was negligence on the part of Target in the maintenance of its floor. Based on the record in this case, Target has met its burden by identifying those portions of the depositions and answers to interrogatories on file, together with the affidavit, which it believes demonstrate the absence of a genuine issue of

material fact.  By making this initial showing, the burden shifts to Gordon to point to other portions of the record that would show that there was indeed a genuine issue of fact regarding the causation issue.

It is not necessary that Gordon identify with any specificity the nature of the substance or condition of the floor that caused her to fall.  *Williams v. Sears, Roebuck & Co.*, 866 So.2d 122, 123 (Fla. Dist. Ct. App. 2004).  Thus, even though Gordon cannot say what caused her to fall, "she should not be denied her day in court unless it is conclusively proven that there was no substance on the floor that was the proximate cause of her injuries."  *Id*.  However, in *Williams v. Sears, Roebuck & Co.*, the court found that absent allegations by the patron as to the substance on which she allegedly slipped, the store was not liable for injuries suffered by the patron in light of evidence that, immediately following plaintiff's fall, the store's safety coordinator examined the area for the presence of any foreign substance on the floor or on plaintiff's clothing and did not find anything, and there was no evidence that any other person observed any foreign substance or debris on floor.  *Williams v. Sears, Roebuck & Co*, 866 So.2d 122 (Fla. Dist. Ct. App. 2004).

This is not a case where Gordon has simply failed to demonstrate what substance was on the floor that caused her to fall.  Rather, this is a case where Gordon has failed to raise a genuine issue of material fact that there was any substance or item in the floor that caused her to fall or that Target failed to exercise reasonable care in maintaining the premises.   Target has introduced evidence

establishing that immediately following Plaintiff's fall, an inspection was made by at least four people, who examined the area for the presence of any transitory foreign substance or debris.  All inspections were negative.  For her part, the Plaintiff has no idea what caused her to fall and there is no record evidence of any other person, employee, or customer who made such an observation.  It appears that Plaintiff's case is grounded in no more than a guess or speculation, not founded on observable facts or reasonable inferences drawn from the record.  Plaintiff's description of the accident contains no allegation of any positive act or omission on the part of Target.

The Court is mindful to draw inferences from the evidence in the light most favorable to the Plaintiff and resolve all reasonable doubts in Gordon's favor. However, only one inference reasonably can be drawn from the evidence in this case, and that is that Gordon's fall was not due to Target's failure to maintain its floor in a reasonably safe condition.  This inference leads to the unavoidable conclusion that Plaintiff cannot prove her claim of negligence as a matter of law.  *Fiedler*, 971 So.2d at 258.

Plaintiff's affidavit, made after she answered Defendant's interrogatories and after she completed her deposition, mentions for the very first time that she "smelled something like a cleaning product. . . like WD-40 or floor cleaner" when she fell.  Raising this issue for the first time constitutes an impermissible attempt to change her testimony in an effort to avoid summary judgment.  If Gordon had erroneously omitted in her answers to interrogatories the "fact" that she had smelled

a cleaning product when she fell, she had ample opportunity to amend her answers and provide this information to Target when she testified at her deposition. She did not. Moreover, she now reveals this significant "fact" without any explanation of why she failed to reveal this "fact" before filing her affidavit in opposition to summary judgment.

In considering a motion for summary judgment, a reviewing court must consider all the proffered evidence and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition. *Kennett-Murray Corporation v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980). However, when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony. *Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.,* 736 F.2d 656, 657 (11th Cir. 1984). If a party, when met by a motion for summary judgment, attempts to repudiate her previous deposition testimony by affidavit, and no explanation for the discrepancy is made, a court may disregard the affidavit as a sham. *See Lane v. Celotex Corp.* 782 F.2d 1526, 1529-30 (11th Cir. 1986).

The statement in her affidavit that she smelled WD-40 or a cleaning product when she fell is less reliable than the contradictory statements Plaintiff made in her deposition and in her answers to interrogatories, where she averred she had no idea what made her fall. Accordingly, Gordon's statement in her affidavit that she

smelled WD-40 or a cleaning product when she fell does not raise a triable issue of negligence.

Even if the Court considered Gordon's affidavit and the fact that Plaintiff smelled something like WD-40 or a cleaning product when she fell, such testimony does not logically lead to the conclusion that what Gordon smelled was on the floor, caused her to fall and was a result of Defendant's negligence.  In order to arrive at a conclusion that Target was responsible for Gordon's injury, the jury would have to infer from the fact that Gordon smelled a substance that the substance was actually present; then they would have to infer that the substance caused Gordon to fall; then they would have to infer that the presence of the substance was a result of Target's failure to use or exercise reasonable care in maintaining the premises.  The Court concludes that such a conclusion could only be reached by impermissibly piling inferences upon inferences.   "An inference is not reasonable if it is only a guess or a possibility for such an inference is not based on the evidence but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1342 (11th Cir. 1982) (internal quotation marks omitted).  Indeed, "speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Chambers v. Walt Disney World, Co.*, 132 F. Supp. 2d 1356, 1363 (M.D. Fla. 2001) (quoting *Tyler v. Runyon*, 70 F.3d 458, 469 (7th Cir. 1995)).

"[T]he right to recover in a slip and fall case requires more than a showing

simply that the surface upon which the injured fell was slick, smooth or wet." *See Williams v. Holland*, 205 So.2d 682, 683 (Fla. Dist. Ct. App. 1968).  Before there can be recovery for a slip and fall injury, the allegations must show some negligence on the part of the defendant.  *Bucholtz v. City of Jacksonville*, 72 So.2d 52 (Fla. 1954); *Commercial Credit Corporation v. Varn*, 108 So.2d 638, 639-40 (Fla. Dist. Ct. App. 1959).  Target met its initial burden of establishing that there was no substance on the floor that was the proximate cause of Plaintiff's injuries and that it did not fail to use reasonable care.  *Williams v. Sears, Roebuck & Co.*, 866 So.2d at 123; *see also Kirk v. TJ Palm Beach Associates Limited Partnership*, 976 So.2d 694 (Fla. Dist. Ct. App. 2008).  Having met its burden, the burden then shifted to Gordon to show by reference to the record that there is indeed a genuine issue of fact regarding Target's alleged negligence.  Gordon has not met this burden.  Where the cause of the fall, as in this case, is mere speculation, guess, or conjecture, there is not even a scintilla of evidence to create a material issue of fact for jury determination.  Therefore, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion For Summary Judgment **[DE 16] is GRANTED.**  In accordance with Fed.R.Civ.P. 58, final judgment will be entered

by separate order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 21st day of June, 2008.

KENNETH A. MARRA
United States District Judge

copies to:

All counsel of record
Magistrate Judge Linnea R. Johnson